UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOHN A. DESIENO, JR.,

                              Plaintiff,

      v.                                                  02-cv-0148

CRANE MANUFACTURING & SERVICES
CORP., and TELEMOTIVE INDUSTRIAL
CONTROLS,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

        Plaintiff commenced the instant action alleging that he sustained personal injuries arising out of his repeated use of defectively designed crane controls. Plaintiff claims to have been injured relative to the use and operation of the radio controls because the radio controls were not ergonomically correct. Currently before the Court is Defendant Telemotive Industrial Controls' motion for summary judgment pursuant to FED. R. CIV. P. 56 seeking dismissal of Plaintiff's products liability claims.

**I.     FACTS**

        In 1972, Crane Manufacturing & Service Corp. ("Crane") sold two 3/25 ton cranes to General Electric ("GE"). Crane also sold GE a remote radio control with one transmitter to be the master control for the two cranes and with the other transmitter to operate the individual crane motions only. The radio control sold by Crane to GE was manufactured by

GE. In 1989, Telemotive Industrial Controls ("Telemotive") sold to GE remote radio controls that replaced the GE controls previously supplied by Crane in 1972.

Plaintiff was a GE employee who operated cranes. Plaintiff contends that he suffered repetitive stress injuries resulting from his operation of the radio control. Plaintiff argues that the defective design and manufacture of the radio control made it impossible to operate the control without bending his wrists at a 90 degree angle, thereby increasing the risk of a repetitive stress injury. According to Plaintiff, the likelihood of injury was exacerbated by the requirement of holding the approximately ten pound radio control unit while operating the levers.

Defendant contends that it provided GE with a waist belt, shoulder strap, or "Sam Brown harness" (consisting of a waist belt and shoulder strap) for every radio control device purchased. Plaintiff concedes that Defendant provided shoulder harnesses to GE. Plaintiff's evidence demonstrates that the strap provided by Defendant could be used over the shoulder or around the waist. Plaintiff also concedes that he was issued a strap that was available to him to use while operating the radio control. Plaintiff, however, denies that he, or any other GE employees, were issued the waist belt/shoulder strap combination known as the Sam Brown harness. Thus, there appears to be a question of fact whether Defendant provided the Sam Brown harness to GE for use by GE employees, or another type of shoulder or waist strap.[1] Defendant argues that the straps were designed to allow the radio control operator to carry the radio control device without the use of his hands and to enable

---

[1] Although John Downey testified that the Sam Brown harness was standard with each control, he also testified that "[w]e have always provided straps, whether it be a waist belt or a shoulder strap or what we call a Sam Brown type harness where there's a strap over the shoulder and a waist belt." Downey Dep. at 76. This leaves open the possibility that Defendant provided a type of strap other than the Sam Brown variety.

the operator to access the crane controls from underneath the handle/safety bar.[2]  Plaintiff responds that, while the straps may have assisted the operator in carrying the control unit, they did not allow the operator to access the crane controls from underneath the handle/safety bar.  Because the straps caused discomfort and because Plaintiff believed that using the strap made operating the controls awkward and uncomfortable, he did not use a strap.  Instead of using the strap, Plaintiff chose to hold onto the control unit by holding onto the handle/safety bar with his ring and pinky fingers and operating the controls by using the front and back of his remaining fingers.

As noted *supra* at n.2, Defendant maintains that the design of each radio control unit incorporated a safety bar over the top of the control levers.  According to Defendant, the safety bar is designed to prevent accidental activation of the crane controls.  Plaintiff denies that this feature is a safety bar and maintains that it is a handle designed for carrying the radio control.  Some of Defendant's own documentation labels this design feature as a handle.

Defendant also contends that it provided training to GE employees concerning the proper use of the radio controls.  While there is some indication that Defendant provided training regarding the operation of the control and the proper use of a carrying strap, it is unclear when and to what extent Defendant provided training to GE employees on the use of the radio control devices at issue in this case.

---

[2] Much of the dispute in this case centers over whether the bar on the top of the radio control unit is a handle or a safety bar.  Plaintiff contends that there is a handle on the top of the unit by which it may be carried.  Defendant argues that this is not a handle, but a safety bar designed to prevent accidental actuation of the control levers.  Some of Defendant's own literature refers to this bar as a handle. Looking at the evidence in the light most favorable to the non-movant, it appears that the bar is, indeed, a handle.  For purposes of this motion, the Court will refer to the bar as a "handle/safety bar."

## II.  STANDARD OF REVIEW

On a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 592 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  A party seeking summary judgment bears the burden of informing the Court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the movant is able to establish a basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  Although the Court views the evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in his favor, Abramson v. Pataki, 278 F.3d 93, 101 (2d Cir. 2002), a party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d. Cir. 1998).  With this standard in mind, the Court will address the pending motion for summary judgment.

**III.     DISCUSSION**

   **a.     Defective Design**

Plaintiff contends that the radio control unit was defectively designed because it required operators to maneuver the control levers with their wrists extended at a ninety degree angle over the handle/safety bar, which position is likely to cause a repetitive stress injury. Defendant argues that it properly designed the control unit to be used with a strap such that the controls can be maneuvered from underneath the handle/safety bar and that Plaintiff failed to use the control unit in the intended manner.

"Under New York law, a design defect may be actionable under a strict products liability theory if the product is not reasonably safe." Denny v. Ford Motor Co., 87 N.Y.2d 248, 257 (1995). "In design defect cases, the alleged product flaw arises from an intentional decision by the manufacturer to configure the product in a particular way." Id. at 257 n.3.

> In recognizing a cause of action for strict products liability, [the New York Court of Appeals has] stated that the manufacturer of a defective product is liable to any person injured or damaged if the defect was a substantial factor in bringing about his injury or damages; provided: (1) that at the time of the occurrence the product is being used . . . for the purpose and in the manner normally intended, (2) that if the person injured or damaged is himself the user of the product he would not by the exercise of reasonable care have both discovered the defect and perceived its danger, and (3) that by the exercise of reasonable care the person injured or damaged would not otherwise have averted his injury or damages.

Voss v. Black & Decker Mfg. Co., 59 N.Y.2d 102, 106 (1983) (internal quotation and citation omitted). "[A] defectively designed product is one which, at the time it leaves the seller's hands, is in a condition not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its intended use; that is one whose utility does not outweigh the danger inherent in its introduction into the stream of commerce." Robinson v. Reed-Prentice

Div. of Package Mach. Co., 49 N.Y.2d 471, 479 (date).  "In order to establish a prima facie case in strict products liability for design defects, the plaintiff must show that the manufacturer breached its duty to market safe products when it marketed a product designed so that it was not reasonably safe and that the defective design was a substantial factor in causing plaintiff's injury."  Voss, 59 N.Y.2d at 107.  "[T]he proper standard to be applied should be whether the product as designed was 'not reasonably safe' - that is, whether it is a product which, if the design defect were known at the time of manufacture, a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed in that manner."  Id.

> The plaintiff . . . is under an obligation to present evidence that the product, as designed, was not reasonably safe because there was a substantial likelihood of harm and it was feasible to design the product in a safer manner.  The defendant manufacturer, on the other hand, may present evidence in opposition seeking to show that the product is a safe product - that is, one whose utility outweighs its risks when the product has been designed so that the risks are reduced to the greatest extent possible while retaining the product's inherent usefulness at an acceptable cost.

Id.

Defendant moves for summary judgment on the ground that its product was properly designed, but that Plaintiff was injured due to his misuse of the product and his failure to use it in the intended manner.  In support of this contention, Defendant maintains that, when the radio control unit was not being used on a table, it was to be carried with the use of a strap which enabled the bottom of the unit to rest against the user's body, thereby enabling the user to gain access to the controls underneath the handle/safety bar.  The argument is that if the user could gain access to the levers from under the handle/safety bar, the user would not have to extend his wrists at a ninety degree angle.  Plaintiff responds that,

while he was aware of the option of using a carrying strap, the carrying strap caused shoulder pain; he was not provided with a Sam Brown harness that enabled him to position the unit such that its bottom was against his body; the shoulder strap provided did not position the unit such that its bottom was against his body; the amount of clearance between the handle/safety bar and the control levers was insufficient to permit proper operation of the radio unit without causing undue stress; and the handle/safety bar is clearly a handle, was intended to be used as such, and Defendant knew it was used as such.

The Court finds that there is a triable issue of material fact concerning the manner in which the radio control unit was intended to be used and/or carried. Although Defendant submits evidence that the control unit came with a carrying strap and that the carrying strap should have been used in carrying the device, a reasonable juror could look at the product information (which refers to the handle/safety bar as a handle and not a safety bar) and the general appearance of the unit and conclude that the handle/safety bar is indeed a handle and was intended to be used as such. Defendant offers no product information, instruction manuals, warnings, or training materials indicating that the unit had to be carried with a safety strap to properly operate it so as to avoid injury. Defendant fails to provide conclusive proof that the radio control unit was intended to be used only in connection with a strap (except for those situations when the unit was placed on a stationary surface). Defendant further fails to provide conclusive proof that it supplied a Sam Brown harness that would enable the unit to be carried in a manner such that its bottom would be against the user's body, thereby enabling the user to gain access to the control from under the handle/safety

bar.³  A fair-minded trier of fact also could reasonably conclude that, even with the use of a strap, the unit was to be operated with its bottom parallel to the floor, such that the user would have to extend his wrists at a ninety degree angle over (or under) the handle/safety bar to operate the control levers.  The Court further finds that the trier-of-fact could also reasonably conclude that it was reasonably foreseeable to Defendant that an operator may use the control by holding the handle/safety bar and not by using the carrying strap.

        Defendant also contends that there is no evidence to establish that any risk of carpal tunnel syndrome is inherent in the design of the radio control, but, rather, that the evidence is that Plaintiff's injuries are the result of his misuse of the product.  Indeed, there is evidence from which the trier of fact could conclude that Plaintiff's failure to use a carrying strap contributed to his injuries because he was forced to carry an approximately ten pound unit with his fingers, hands and arms while simultaneously attempting to operate the control levers, thereby increasing the stress upon his muscles and ligaments.  It cannot be said, however, that a fair-minded jury could only conclude that the failure to use the carrying strap was the proximate cause of Plaintiff's injuries.  There is evidence in the record that the strap was too narrow to support the control box, the strap did not enable the control box to be carried in the manner Defendant contends it intended, the strap interfered with the operation of the control levers, and the strap itself irritated the soft tissue on the shoulders.  Moreover, Plaintiff's expert opines that the location of the control levers in relation to the handle/safety bar "results in the crane operator's fingers positioned in awkward, cramped, and deviated

---

³ Defendant submits the affidavit of Jay Potter who states that G.E.'s Crane Maintenance Supervisor, John Miller, told him that G.E. disposed of the Sam Brown harnesses upon receipt. Of course, this is unsubstantiated hearsay that may not be considered in connection with this motion for summary judgment.

postures, thus increasing the risk of cumulative trauma disorders." From this evidence, the trier of fact could reasonably conclude that the product's design contributed to Plaintiff's repetitive stress injury.

Defendant attacks Plaintiff's expert on the ground that he "fails to address the positioning of the lever in relationship to the user when the device is properly attached to the carrying strap. When properly attached to the carrying strap, the safety bar is parallel to the user's body rendering the entire length of the lever-like controls accessible to the user." For the reasons previously discussed, however, a jury could reasonably conclude that the product was not intended to be operated in such a manner and that, even if it was, that fact was not reasonably made known to GE or the GE employees by Defendant and it was reasonably foreseeable to Defendant that an operator may not use the radio control unit in the allegedly intended manner. Thus, whether Plaintiff's expert offered an opinion based upon this positioning of the control unit may be irrelevant.

### b.     Manufacturing Defect

To the extent Plaintiff asserts a claim of a manufacturing defect, there is insufficient evidence in the record substantiating any such type of defect. Accordingly, any claim of a manufacturing defect must be dismissed.

### IV.     CONCLUSION

For the foregoing reasons, the Court concludes that, while it appears that Plaintiff may have significantly contributed to his own injuries by failing to use the carrying straps that were available to him, it cannot be said that his injuries (or some of them) were not proximately caused by the design of the control unit. Plaintiff has failed to point to sufficient evidence from which a fair-minded trier of fact could reasonably conclude that the control unit

suffered from a manufacturing defect. Accordingly, Defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART. Defendant's motion is GRANTED insofar as any manufacturing defect claim is DISMISSED. In all other respect, Defendant's motion is DENIED.

IT IS SO ORDERED.

Dated: October 19, 2006

_____
Thomas J. McAvoy
Senior, U.S. District Judge